United States District Court
Middle District of Florida
Jacksonville Division

**KAREN DENISE TREADWELL,**

*Plaintiff,*

v.                                                    **NO. 3:24-cv-1259-PDB**

**COMMISSIONER OF SOCIAL SECURITY,**

*Defendant.*

---

## Order

Proceeding under 42 U.S.C. § 405(g), the plaintiff requests judicial review of a final decision by the Commissioner of Social Security, presenting two primary arguments for reversal and remand. Doc. 1. The procedural history, evidence, and law are summarized in the Administrative Law Judge's (ALJ's) decision, Tr. 15–33, and the parties' briefs, Docs. 16, 18, 19, and not fully repeated here. The pertinent period is February 23, 2018, to June 30, 2023. Tr. 17.

### 1.

Section 405(g) details the court's review power and limits:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing. The findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner … or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Commissioner …, because of failure of the

> claimant or such individual to submit proof in conformity with any regulation prescribed …, the court shall review only the question of conformity with such regulations and the validity of such regulations.

42 U.S.C. § 405(g). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoted authority omitted). A court may not decide facts anew, make credibility findings, or reweigh the evidence. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F. 4th 1315, 1320 (11th Cir. 2021).

## 2.

The plaintiff argues that the ALJ erred in failing to consider a consulting examiner's opinion that she would have moderate limitations in workplace interactions, leaving the residual functional capacity (RFC) finding unsupported by substantial evidence and resulting in harmful error. Doc. 16 at 13–17.

An ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ will consider supportability, consistency, the relationship with the claimant, any specialization, and "other factors," including evidence that a medical source is familiar with the other evidence in the claim or understands the disability program's policies and evidentiary requirements. *Id.* § 404.1520c(c)(1)–(5).

The most important factors are supportability and consistency, and the ALJ must explain how she considered them. *Id.* § 404.1520c(a), (b)(2).

Supportability concerns the support provided by the source issuing the opinion: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). Consistency concerns a comparison with other items in the record: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

The consulting examiner, Peter Knox, Psy.D., completed a "CLINICAL EVALUATION AND MENTAL STATUS" on May 11, 2022. Tr. 839–44. The ALJ described the evaluation:

> On May 11, 2022, Peter Knox, Psy.D., performed a psychological consultative evaluation (Exhibit 20F). At the evaluation, the claimant alleged she was disabled because she has issues with diabetes, high blood pressure, hearing and vision problems. She sees a therapist once a week for [l]ong-term issues. She has a knot in her back after falling in 2017, slipping at work (Exhibit 20F page 1). She last worked as a waitress at Cracker Barrel[] for nine years, but quit as she was tired of waitressing. At the evaluation, the claimant's mood was euthymic[,] and she had a pleasant affect. There was no indication of tangential or circumstantial thinking, and she could relate information in a rational, coherent, and sequential fashion. She was oriented to time, place, person, and purpose. She could count backwards from twenty to one with no errors. For recent and remote memory, she could recall four out of four words at five minutes, and fifteen minutes. She could count by threes from one to 37 with no major problems. As far as functional ability, the claimant stated that she was limited with carrying no more than a milk (gallon) and not lifting. The claimant had no problems with hearing, speaking, or sight. As far as sitting and standing, she could sit no more than a few minutes, and then she could stand for ten minutes to do dishes, and then she has to sit. No work[-]related mental activities were noted.

3

> Her memory appeared intact. There were no significant issues with concentration or persistence. For social interaction and adaption, she stated that an average day varies, she may sleep all day, then she will sleep for two hours and have bouts of energy and will clean house. She will cook dinner for her husband. She has no close friends[] and has not had any friends in a few years. Dr. Knox diagnosed bipolar I disorder[] and assigned an Axis V Global Assessment of Functioning (GAF) of 55, which is reflective of only moderate symptoms pursuant to the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) (Exhibit 20F). Dr. Knox noted that the claimant's history of off and on again depression since 1983. She has been seeing a therapist since January 2021. She noted her symptoms were bouts of depression with aggression and irritability. She makes poor decisions. She will have bouts of energy cleaning house, and cooking (Exhibit 20F page 7). Dr. Knox gave no work[-]related limitations (Exhibit 20F).

Tr. 26–27 (emphasis omitted).

Dr. Knox completed a "MEDICAL SOURCE STATEMENT OF ABILITY TO DO WORK-RELATED ACTIVITIES (MENTAL)," Tr. 1022–24, and a "CLINICAL EVALUATION AND MENTAL STATUS," Tr. 1025–30, on December 19, 2022. He checked a "yes" next to the question, "Is ability to interact appropriately with supervisors, co-workers, and the public, as well as respond to changes in a routine work setting, affected by the impairment?" Tr. 1023. After the question, he checked "moderate" to describe the plaintiff's restrictions in the "work-related mental activities" of "[i]nteract appropriately with the public," "[i]nteract appropriately with supervisor(s)," "[i]nteract appropriately with co-workers," and "[r]espond appropriately to usual work situations and to changes in a routine work setting." Tr. 1023. To the direction, "Identify the factors (e.g., the particular medical signs, laboratory findings, or other factors described …) that support your assessment," he explained, "This depends on her depression or mania as she can be aggressive and irritable or in her depression she will have little interaction." Tr. 1023. He checked "yes"

next to the question, "Are any other capabilities (such as the ability to concentrate, persist, or maintain pace and the ability to adapt or manage oneself) affected by the impairment?" and explained, "Her hearing loss will impair her concentration and persistence. Unstable diabetes and pain level may also affect her." Tr. 1023.

The ALJ described the medical source statement and evaluation:

> On December 19, 2022, the claimant returned to Dr. Knox, who performed a second psychological consultative evaluation. The claimant reported going to a therapist since January 2021. Dr. Knox diagnosed bipolar I disorder-depressed type and assigned a GAF score of 55. On December 19, 2022, Dr. Knox completed a mental source opinion and found that she had a moderate limitation in making judgments on complex work[-]related decisions. Dr. Knox noted that her main issue in the area is decision making and judgment which will be impaired with her bipolar (Exhibit 27F page 2). Dr. Knox opined that she would have moderate limitations in her ability to interact with the public, supervisors, and co-workers. Dr. Knox stated that "this depends on her depression or mania as she can be aggressive and irritable or in her depression, she will have little interaction (Exhibit 27F page 3).

Tr. 29.

The ALJ evaluated Dr. Knox's opinion:

> I find the opinion of Dr. Knox … not persuasive. Dr. Knox diagnosed the claimant with bipolar I disorder, which is inconsistent with the medical evidence of record and findings by Drs. [Kent] Layton and [Akua] Owusu. In the medical source opinion …[,] Dr. Knox indicates that her main issue was in the area of decision making and judgment which "will be impaired by her bipolar disorder," yet as stated above[,] Drs. Layton and Owusu[] did not make a finding of bipolar I disorder, but rather diagnosed bipolar II disorder. Dr. Knox also noted that the claimant would have limitations with social interaction and with respond[ing] appropriately to usual work situations and changes in a routine work setting "depending on her depression and mania as she can be aggressive and irritable." Yet, I did not see ongoing issues of aggression and irritability documented

5

> in the claimant's treatment records (Exhibit 27F), and the claimant reported that she does not have trouble getting along with others, has no problems getting along with authority figures and that she has never been fired or laid off from a job because of problems getting along with other people (Exhibit 9E/6).

Tr. 32; *see also* Tr. 30 ("Dr. [Kent] Layton testified that the claimant has bipolar type II, and she has never had a manic episode where she was hospitalized. Bipolar I disorder was diagnosed by Peter Knox, Psy.D., who performed the consultative evaluation, and [the] treating doctor diagnosed bipolar I disorder, however[,] the criteria of bipolar I requires manic symptoms so severe that it requires hospitalization, but … she was not hospitalized pursuant to either the record or testimony (Transcript 6/6/23 1:19:40)."). Elsewhere, in finding that the plaintiff has a "mild" limitation in the functional area of "interacting with others," the ALJ explained, "The claimant is married and resides with her husband. [She] has had appropriate interactions with healthcare providers at her medical appointments[] and consultative evaluations[.]" Tr. 20.

Contrary to the plaintiff's argument, the ALJ did not err in failing to consider Dr. Knox's opinion that she would have moderate limitations in workplace interactions. In accordance with the governing regulations, the ALJ considered Dr. Knox's opinion and, as shown through the above excerpts, explained supportability and consistency.

The plaintiff argues that the ALJ's statement that "Dr. Knox gave no work-related limitations" was erroneous and reversible error. Doc. 16 at 14–15 (citing Tr. 27). The argument fails because the ALJ's statement concerns Dr. Knox's first evaluation, in which he specified no work-related limitations. *See* Tr. 27 (citing Exhibit 20F, Tr. 839–44, the May 2022 evaluation). Reversal on this ground is unwarranted.

**3.**

The plaintiff argues that the ALJ erred in finding that the plaintiff's urinary incontinence was a non-severe impairment and in failing to account for the impairment in the RFC. Doc. 16 at 17–21.

An ALJ must consider "the medical severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii). For an impairment to qualify as severe, the impairment must have lasted or be expected to last for a continuous period of at least twelve months. *Id.* § 404.1509. "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1522(a). "Basic work activities" include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers and usual work situations"; and "[d]ealing with changes in a routine work setting." *Id.* § 404.1522(b). In assessing an impairment, the Social Security Administration considers and addresses reasons for not pursuing treatment. SSR 16-3p, 82 Fed. Reg. 49463 (Oct. 25, 2017).

If the claimant has no severe impairment, the ALJ must find the claimant not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). Any error in an ALJ's severity finding is harmless if the ALJ proceeded in the sequential evaluation, considered the impairment when assessing the RFC, and reached conclusions about the claimant's capabilities supported by substantial evidence. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019).

The ALJ provided the following reasons for finding the plaintiff's urinary incontinence non-severe:

> [Particular] impairments are not severe within the meaning of the Regulations because the medical evidence does not establish that they significantly limit the claimant's ability to perform basic work activities. Any other diagnosis, ailment or condition not specifically setout herein was both not severe and acute in nature or otherwise quickly resolved and was not expected to lead to any permanent work restriction.
>
> ….
>
> The claimant has not received treatment for urinary incontinence. [She] testified that she receives all her treatment from Barnabas [Health Services, Inc.] as a charity patient and they did not have a specialist for incontinence[.] [E]xcept for a statement to Mary K. Robinson, M.D., in April 2021, the treatment record does not include any treatment for bladder incontinence until June 26, 2023. On April 2, 2021, she stated to Dr. Robinson, that she has suffered with frequent urinary tract infections through adulthood. She has had to use adult diapers for urinary incontinence for the past three years. She stated that "if I sneeze or cough, or suddenly get up from sitting down, I leak urine" (Exhibit 5F page 5). There is no other mention of urinary incontinence in the treatment records until November 2022.
>
> On July 28, 2021, Dr. [Elaine] Holmes noted that the claimant reported not having any bowel or bladder incontinence (Exhibit 16F page 2). On November 23, 2022, at a Barnabas Health appointment[,] the claimant indicated that she had urinary bladder dysfunction and she had symptoms of urge incontinence and has resorted to wearing protective underwear, however[,] no diagnosis or treatment was recommended (Exhibit 33F pages 18–19). On June 26, 2023, the claimant had a telehealth appointment with Dr. Robinson and related a history of bladder incontinence since childhood. Dr. Robinson, without examination[,] stated that the claimant manifested symptoms of diabetic cystopathy (Exhibit 33F page 5). Based on the telehealth appointment, Dr. Robinson wrote a letter indicating that the claimant's condition arises from multiple etiologies, which makes it difficult to respond to treatment, and ultimately that the claimant[ is unable] to engage in full-time employment (Exhibit 34F page 1). All of the conclusions by Dr.

8

> Robinson were made without documentation of a physical exam or mention of testing to determine the extent of bladder incontinence.

Tr. 18–19.

The evidence on which the ALJ based her findings is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus constitutes substantial evidence. *See Richardson*, 402 U.S. at 401 (quoted). In April 2021, the plaintiff reported having suffered from frequent urinary tract infections throughout her adulthood and having used adult diapers for the previous three years. Tr. 18, 1106. During the remainder of 2021, she denied bladder incontinence. Tr. 18, 688, 745, 763, 822, 827. In November 2022, she reported urinary dysfunction and wearing protective underwear, but was not diagnosed with an impairment or given any recommended treatment. Tr. 18, 1102–03. In June 2023, she reported that she had had a history of bladder incontinence since childhood. Tr. 18, 1089. She did not receive treatment for bladder incontinence until four days before her date last insured. Tr. 17, 18, 1089. As the Commissioner observes, "Despite … lifelong symptoms, Plaintiff performed her past relevant work as a waitress. Plaintiff has not explained how her urinary incontinence, present since childhood, did not prevent her past relevant work in the past but now precludes performance of the same work." Tr. 12.

Later, the ALJ observed, "Since February 2018, [the plaintiff] has not had any kidney infections. She just has incontinence, which started before the kidney infections." Tr. 21. The ALJ rejected the statement by Dr. Robinson—largely based on the plaintiff's alleged bladder dysfunction—that the plaintiff could not work, explaining, "All of the conclusions by Dr. Robinson were made without documentation of a physical exam or mention of testing to determine the extent of bladder incontinence." Tr. 18–19, 31, 1110. In explaining the RFC,

the ALJ repeated, "Dr. Robinson gave an opinion about the claimant's ability to work as it related to urinary incontinence, yet she made this opinion without a physical examination or objecti[ve] testing." Tr. 31. The ALJ found persuasive the administrative medical findings by P.S. Krishnamurthy, M.D., Tr. 62–63, and Gary Smith, M.D., Tr. 71–73, who reviewed the medical records and identified no work-related limitations to address the plaintiff's urinary incontinence, Tr. 68, 73, 631, 686, 822, 827.

The plaintiff argues that the ALJ improperly relied on her lack of treatment and criticized her for not receiving specialized treatment without assessing her ability to afford treatment. Doc. 16 at 18–19. This argument is unpersuasive. The ALJ observed that the plaintiff "has not received treatment for urinary incontinence," but immediately explained that the plaintiff had testified that she receives treatment from Barnabas as a charity patient, and Barnabas has no specialist for incontinence. Tr. 18, 1136–37. The ALJ based the non-severe finding not on the absence of treatment that the plaintiff could not afford but on the lifelong nature of the plaintiff's incontinence, the plaintiff's inconsistent reporting of incontinence, the absence of recommended treatment in response to complaints about incontinence, and the plaintiff's wearing of protective items to address the incontinence. Tr. 18–19.

Replying to the Commissioner's observation about her ability to perform her past relevant work as a waitress despite her lifelong symptoms, the plaintiff explains that her incontinence worsened during, and was associated with, the period she was no longer able to work. Doc. 19 at 2 (citing Tr. 1106). She relies on the April 2021 treatment note stating that she reported having to "use adult diapers for urinary incontinence for the past three years" and related "a long and productive employment history prior to the point when her

10

impairments significantly began to impact her ability to perform even basic activities of daily life." Doc. 19 at 2–3; Tr. 1106. The explanation fails to show that the ALJ erred. The ALJ considered the treatment note, *see* Tr. 18, and based the non-severe finding on the evidence described above. The ALJ observed that in May 2022, the plaintiff reported to Dr. Knox that she quit her waitressing job because "she was tired of waitressing." Tr. 26, 840. Reversal is unwarranted.

## 4.

The Commissioner's final decision is **affirmed**. The clerk is **directed** to enter judgment for the Commissioner of Social Security and against Karen Denise Treadwell and close the file.

**Ordered** in Jacksonville, Florida, on March 6, 2026.

Patricia D. Barksdale
United States Magistrate Judge

11